UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **INDICTMENT** CR 13-49 DWF/TNL |
| ) | |
| Plaintiff, ) | 18 U.S.C. § 2 |
| ) | 18 U.S.C. § 1591(a)(1) |
| v. ) | 18 U.S.C. § 1591(a)(2) |
| ) | 18 U.S.C. § 1591(b)(1) |
| NICOLE ROCHELLE BRAMER and ) | 18 U.S.C. § 1591(b)(2) |
| ANDRE JAMES HERTZOG, ) | 18 U.S.C. § 1594(a) |
| ) | 18 U.S.C. § 1594(c) |
| Defendants. ) | 18 U.S.C. § 2421 |
| ) | 18 U.S.C. § 2423(a) |

## THE UNITED STATES GRAND JURY CHARGES:

## COUNT ONE

### [Sex Trafficking Conspiracy]

### CONSPIRACY

Beginning on or about April 14, 2011, and continuing through on or about August

2, 2012, in the District of Minnesota and elsewhere, defendants,

### NICOLE ROCHELLE BRAMER and ANDRE JAMES HERTZOG,

did knowingly conspire with one another and others, in and affecting interstate

commerce, to recruit, entice, harbor, transport, provide, obtain, and maintain persons,

knowing, and in reckless disregard of the fact that means of force, threats of force, fraud,

and coercion, and a combination of such means, would be used to cause the persons to

engage in commercial sex acts, a violation of Title 18, United States Code, Section

1591(a)(1) ("the conspiracy").

SCANNED

MAR 1 2 2013

U.S. DISTRICT COURT MPLS

FILED  MAR 1 1 2013
RICHARD D. SLETTEN
JUDGMENT ENTD
DEPUTY CLERK

## OBJECT OF THE CONSPIRACY

1.      The object of the conspiracy was to cause persons to engage in commercial sex acts by means of force, threats of force, fraud, and coercion, and any combination of such means.

## MANNER AND MEANS OF THE CONSPIRACY

2.      It was part of the conspiracy that defendants BRAMER and HERTZOG would and did identify, recruit, and entice vulnerable women and girls for the purpose of causing them to engage in commercial sex acts.

3.      It was further part of the conspiracy that defendant BRAMER would and did place advertisements on websites, such as Backpage.com, offering the women for commercial sex acts.

4.      It was further part of the conspiracy that defendant BRAMER would and did use force, threats of force, fraud, and coercion to cause and to attempt to cause women and girls to engage in commercial sex acts.

5.      It was further part of the conspiracy that defendants BRAMER and HERTZOG did transport women and girls for the purposes of engaging in commercial sex acts.

6.      It was further part of the conspiracy that defendants BRAMER and HERTZOG did use telephone communications to promote, facilitate, and conduct their sex trafficking scheme.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, at least one of the co-conspirators committed or caused to be committed at least one of the following overt acts, among others, in the District of Minnesota and elsewhere:

7.    In or around April 2011, defendant HERTZOG contacted defendant BRAMER, provided her with the telephone number of G.M., an adult female whose identity is known to the Grand Jury, and urged defendant BRAMER to contact G.M.

8.    In or around April 2011, defendant BRAMER contacted G.M. by telephone using the contact information provided by defendant HERTZOG.

9.    In or around April 2011, defendant BRAMER invited G.M. to stay at defendant BRAMER's home.

10.    In or around April 2011, defendant BRAMER drove G.M. to a hotel in St. Cloud, Minnesota.  Defendant BRAMER told G.M. to engage in commercial sex acts to make money to support defendant BRAMER and G.M.

11.    In or around April 2011, defendants BRAMER and HERTZOG spoke by telephone and defendant BRAMER indicated to defendant HERTZOG that G.M. was engaging in commercial sex acts.

12.    On or about April 21, 2011, defendant HERTZOG asked defendant BRAMER to send him money, reminded defendant BRAMER that defendant BRAMER had previously beaten a female who was engaged in commercial sex acts for "acting up," and advised defendant BRAMER that it was sometimes necessary to be violent.

13.     On or about April 28, 2011, defendant BRAMER told defendant HERTZOG that G.M.'s mother was moving out of Minnesota and G.M. would be living with defendant BRAMER full time.

14.     From in or around April 2011 to in or around October 2011, on a number of occasions, defendant BRAMER advertised G.M. for commercial sex acts on Backpage.com.

15.     On multiple occasions beginning in or around April 2011 and continuing through in or around October 2011, defendant BRAMER drove G.M. or directed G.M. to drive to local hotels and motels for the purpose of performing commercial sex acts.

16.     On multiple occasions beginning in or around April 2011 and continuing through in or around October 2011, defendant BRAMER collected the proceeds from commercial sex acts performed by G.M.

17.     On or about May 5, 2011, defendant BRAMER told defendant HERTZOG she had taken G.M.'s telephone away from her.

18.     On or about May 5, 2011, defendant HERTZOG advised defendant BRAMER he had written a letter to G.M.

19.     On multiple occasions beginning in or around May 2011, and continuing through in or around October 2011, defendant BRAMER verbally abused and physically assaulted G.M. when G.M. failed to obey defendant BRAMER or failed to perform a task to defendant BRAMER's satisfaction.

20.     On or about June 11, 2011, defendant BRAMER alerted defendant HERTZOG by telephone that G.M.'s mother had filed a missing person report regarding

4

G.M., and admonished defendant HERTZOG to be careful what he said as their calls were monitored.

21.     On or about June 18, 2011, defendant HERTZOG and defendant BRAMER discussed defendant BRAMER's use of physical violence against G.M.

22.     On or about July 7, 2011, defendants BRAMER and HERTZOG discussed plans to take G.M. to Chicago, Illinois, for purposes of causing her to engage in commercial sex acts and referenced previous trips to Chicago to cause other women to engage in commercial sex acts.

23.     On or about July 14, 2011, defendant BRAMER told defendant HERTZOG about a recent trip to Chicago, Illinois, and another trip to Chicago planned for the next day.

24.     On or about July 21, 2011, defendant HERTZOG asked defendant BRAMER to send him money from G.M.'s commercial sex acts.

25.     On or about August 10, 2011, defendants HERTZOG and BRAMER disagreed over whether G.M. was, in the words of defendants HERTZOG and BRAMER, defendant HERTZOG's or defendant BRAMER'S "bitch," whether G.M. was "on loan status" from defendant HERTZOG to defendant BRAMER, and who would be in charge of G.M. in the future.

26.     On or about August 27, 2011, upon learning defendant BRAMER had physically assaulted G.M., giving G.M. a black eye, defendant HERTZOG told defendant BRAMER he was glad someone on the outside was getting their "ass kicked."

5

27. Between on or about August 27, 2011, and on or about September 11, 2011, all dates being approximate and inclusive, after G.M. escaped from the hotel where defendant BRAMER had arranged for G.M. to perform commercial sex acts, defendant BRAMER contacted G.M. by telephone and urged G.M. to return to defendant BRAMER.

28. On or about August 29, 2011, defendant BRAMER alerted defendant HERTZOG that G.M. had gone missing from a hotel, leaving her belongings behind.

29. In or around September 2011, after G.M. returned to defendant BRAMER, defendant BRAMER resumed advertising G.M. on websites for commercial sex acts.

30. On or about October 21, 2011, after G.M. escaped a second time and was transported to the hospital, defendant BRAMER arrived at the hospital asking to see G.M. and falsely claiming to be a relative of G.M.

31. On or about October 31, 2011, defendant BRAMER advised defendant HERTZOG that G.M. was gone again.

32. In or around July 2012, defendant BRAMER invited T.F., a female whose identity is known to the Grand Jury and who was then 17 years old, to live with defendant BRAMER.

33. On or about July 28, 2012, defendants HERTZOG and BRAMER drove T.F. from Minnesota to Illinois.

34. On or about August 2, 2012, defendant BRAMER told T.F. she could not return to Minnesota until she had given defendant BRAMER approximately $1000 and

directed T.F. to earn the money by setting up appointments to perform commercial sex acts.

All in violation of Title 18, United States Code, Sections 1591(a)(1) and 1594(c).

## COUNT TWO

### [Sex Trafficking by Force, Fraud, and Coercion]

Beginning on or about April 14, 2011, and continuing through on or about October 21, 2011, in the District of Minnesota and elsewhere, the defendants,

### NICOLE ROCHELLE BRAMER and ANDRE HERTZOG,

aiding and abetting one another and others, in and affecting interstate commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained G.M., an adult female whose identity is known to the Grand Jury, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used and were used to cause G.M. to engage in a commercial sex act; and attempted to do so.

All in violation of Title 18, United States Code, Sections 2, 1591(a)(1), 1591(b)(1), and 1594(a).

## COUNT THREE

### [Interstate Transportation for Prostitution]

In or about July 2011, in the District of Minnesota and elsewhere, the defendant,

### NICOLE ROCHELLE BRAMER,

did knowingly transport G.M., an adult female whose identity is known to the Grand Jury, in interstate commerce with intent that G.M. engage in prostitution.

7

All in violation of Title 18, United States Code, Section 2421.

## COUNT FOUR

### [Sex Trafficking of a Minor and by Force, Fraud, and Coercion]

Beginning on or about July 28, 2012, and continuing until on or about August 2, 2012, in the District of Minnesota and elsewhere, the defendants,

### NICOLE ROCHELLE BRAMER and ANDRE JAMES HERTZOG,

aiding and abetting one another and others, in and affecting interstate commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained T.F., a female whose identity is known to the Grand Jury and who was then 17 years old, having had a reasonable opportunity to observe T.F., and knowing and in reckless disregard of the fact that T.F. had not attained the age of 18 years and would be caused to engage in a commercial sex act, and knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and a combination of such means, would be used to cause T.F. to engage in a commercial sex act; and attempted to do so.

All in violation of Title 18, United States Code, Sections 2, 1591(a)(1), 1591(b)(1), 1591(b)(2), and 1594(a).

## COUNT FIVE

### [Interstate Transportation for Prostitution]

Between on or about July 28, 2012, and on or about August 2, 2012, in the District of Minnesota and elsewhere, the defendants,

### NICOLE ROCHELLE BRAMER and ANDRE JAMES HERTZOG,

8

aiding and abetting one another, did knowingly transport T.F., a female whose identity is known to the Grand Jury and who was then 17 years old, in interstate commerce with intent that T.F. engage in prostitution.

All in violation of Title 18, United States Code, Sections 2 and 2423(a).

## SEXUAL EXPLOITATION FORFEITURE ALLEGATIONS

1.      Counts 1 through 5 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 1594 and 2428.

2.      Upon conviction of the offenses alleged in Counts 1, 2 and 4 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594(d), any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations, and all property, real or personal, constituting or derived from proceeds that were obtained, directly or indirectly, as a result of such violations.

3.      Upon conviction of the offenses alleged in Counts 3 and 5 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 2428(a), all property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations, and all property, real or personal, constituting or derived from proceeds that were obtained, directly or indirectly, as a result of such violations.

4.      If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as

9

provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

A TRUE BILL

_____

THOMAS E. PEREZ                    FOREPERSON
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

By: _____
Mark Kappelhoff
Special Assistant U.S. Attorney
Amanda Gregory
Civil Rights Division